"Defendant moves for summary judgment in this military pay case. The motion is denied and the cause remanded to the Trial Division for further proceedings.
*909 "The following facts are admitted by the parties at least for purposes of the motion, except where attributed to one side only. Plaintiff served four years in the United States Army, ending by honorable discharge February 8, 1971, at enlisted pay grade E-6. Thereafter to March 1975, he served as a police officer of the Germantown, Ohio, force, rising to the rank of Sergeant at a salary of $9,200. That month he was in contact with military recruiters and discussed returning to the regular Army under the 'Stripes for Skills’ program to serve as a military policeman in the 95B20 classification. The program and classification are unfamiliar to the court and not explained by the parties. He stated he had family responsibilities and could accept enlistment into the E-5 grade but no lower. Later, in August, he signed a formal 'Enlistment Contract’ specifying that he would receive promotion to E-5 after eight weeks. An annex to the contract reflects that he is to enter the reserves and make a 'delayed entry’ into the regular. This document says he will take an Army school course on enlistment, which will qualify him for Grade E-4. In that annex, the grade 'E-5’ is stricken out and 'E-4’ substituted, with plaintiffs initials beside it, to denote that the change was made before signature. Neil C. Green, Master Sergeant, says by affidavit he was a supervisor of Guidance Counselors at Cincinnati, that he discovered that the contract promised plaintiff an E-5 after completing the school, that he learned the regulations allowed only E-4, that he so advised plaintiff before he took the oath of enlistment, that plaintiff accepted the enlistment oath with full knowledge he would not be eligible for E-5 on completing the probational training. Plaintiff, however, in a counter affidavit, says that in initialing the correction he understood he was entering the reserves while the matter of his ultimate grade was checked out, and later he reported back, was told he could qualify for E-5, and was sworn into the Regular Army. The fact that only the annex was corrected to show E-4, not the main body of the contract, lends some support to plaintiffs version.
"Plaintiff completed his preliminary school or training and served as E-4 for a brief period. On December 16, 1975, he requested that he be discharged immediately for *910 erroneous enlistment. This was done effective February 4, 1976.
"The failure of the Army to fulfill its E-5 commitment, as alleged, had, he says, various collateral consequences, including repossession of his mobile home and car, loss of his former job and status as a police sergeant, denial of unemployment benefits, etc. He claims: $8,000 to purchase a mobile home, $4,200 to purchase a car, $3,100 for lost salary as an E-5 to the present date, $1,000 for lost Army benefits, $200 as the difference between E-4 and E-5 pay from the promotion to E-4 to the discharge, $50,000 for loss of conjugal benefits, $100,000 for lost retirement benefits, $50,000 for loss of credit rating, and $5,000 for costs and attorney’s fees.
"A soldier’s pay rights formerly were considered to be matters of status, not contract, acquired by appointment and stemming from law or legally authorized regulations. In introducing the express contract of enlistment, the military have presented the court with a novel situation for it, and it must be careful not to take steps that may be regretted on receipt of fuller information. In Jackson v. United States, 213 Ct. Cl. 354, 551 F.2d 282 (1977), plaintiff enlisted under such a written contract, but based his suit on an alleged oral agreement dehors it, not on the contract terms themselves as here. Defendant has assumed rather than briefed the incompatibility of plaintiffs promised E-5 with governing regulation. Defendant’s own personnel seem to have been uncertain as to the existence of an absolute unwaivable bar, and in face of such uncertainty we think defendant should bear the burden of showing what the regulations it relies on provided. The incomplete correction of the contract, rather than precluding factual investigation, invites it, to ascertain what the true intent of the parties was, and whether the contract should be reformed to reflect that intent. We can agree with defendant that its officers cannot bind it to a contract the law does not authorize them to make, without feeling entire confidence that the contract sued on here is of that character. The entire situation here calls for careful inquiry by a trial judge.
*911 "Assuming that contract rather than status governs here, it would apparently follow that a claim based on an 'enlistment contract’ would not be unwaivable, as status claims are, but, on the contrary, could be waived. It would appear likely that, in applying for a discharge 'due to erroneous enlistment’ as plaintiff did, without any express reservation of rights, plaintiff would have waived at least any claim to the monetary benefits of military status, accruing after the effective date of the discharge. The application with the discharge itself, would be deemed in contract law an 'accord and satisfaction,’ we think, wherein defendant waived any claim for plaintiffs services during the remainder of the enlistment period, and plaintiff waived his claim for the emoluments of such service. There might be exceptional situations, as, e.g., duress, but they would have to be pleaded and proven.
"It is well settled that tort claims cannot be allowed as pendant on claims for breach of contract. Jackson v. United States, supra; Algonac Mfg. Co. v. United States, 192 Ct. Cl. 649, 428 F.2d 1241 (1970); Benjamin v. United States, 172 Ct. Cl. 118, 348 F.2d 502 (1965). Except for the claim for $200, difference between E-4 and E-5 pay from promotion to discharge, all claims may well smack of a tortious character in view of the above authorities. Assuming the Trial Division is satisfied that plaintiff is entitled to recover in some amount, the quantum of recovery will remain for careful consideration by the Trial Division in light of contract principles.
"Accordingly, in view of the foregoing, the defendant’s motion for summary judgment is denied and the case is remanded to the Trial Division for further proceedings consistent with this order.”
On plaintiffs motion to dismiss, endorsed "No objection” by defendant, the petition was dismissed on August 2, 1978.